IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MORRIS J. PETTIGREW, SR. #359809     *

          Plaintiff                   *

       v.                                   *    CIVIL ACTION NO. GLR-12-1713

CORIZON MEDICAL SERVICES       *
DR. CLEM, *Medical Director*
PAUL MATERA, *MD*               *
DAVID M. MATHIS, *MD*
LINO QUILO, *MD*                  *
JOSEPH INZERILLO, *MD*
BRUCE FORD. *P.A.*                *
JESSICA CECIL, *P.A.*
JENNIFER PATTERSON, *R.N.*        *

          Defendants         *

## **MEMORANDUM**

I. Background

On June 8, 2012, the Court received this 42 U.S.C. § 1983 Complaint for damages from Morris Pettigrew, Sr., an inmate currently housed at the Western Correctional Institution ("WCI") in Cumberland, Maryland. Plaintiff contends that while housed at the Eastern Correctional Institution ("ECI") on January 23, 2010, he was attacked by eight to ten inmates after the lunch meal had concluded while inmates were lined up in a "meal movement."[1] ECF No. 1. Plaintiff asserts he was covered with chemical spray and cut and stabbed with homemade knives. ECF No. 1.

---

[1] Plaintiff contends that there was only one officer present to cover security during the meal in the facility. He claims that he retreated to a corner of the dining hall in an attempt to avoid attacks from the inmates. ECF No. 1. Plaintiff claims that after the attack began, another officer entered the dining hall and upon witnessing Plaintiff with his back in a corner and a group of inmates approaching, sprayed him, not his assailants. He complains that this officer grabbed him by the collar, allowed him to be beaten by the inmates, drug him to the floor, and maced him several more times with his foot on Plaintiff's neck. ECF No. 1. These issues of failure to protect and excessive force were raised in <u>Pettigrew v. Green, et al.</u>, Civil Action No. GLR-12-1681 (D. Md.).

The thrust of the Complaint concerns Plaintiff's ensuing medical care, or lack thereof. He claims that he was taken to the medical department, where staff would not take pictures of his head, arm, leg and hip injuries. Plaintiff complains he was allowed to "partially" rinse the chemical spray from his eyes, but was not given care for the bloody wounds on his body. He states that he was taken to a medical holding cell, where his pleas for assistance were ignored while other inmates involved in the continuing fight were treated. Plaintiff alleges that he remained on administrative segregation for a week before he was returned to general population. He claims that once back in general population, he made numerous attempts to obtain medical care for unspecified pain and symptoms. Plaintiff asserts he was not seen by medical personnel until February 18, 2010, when he was examined by Physician's Assistant ("PA") Ford, to whom he complained of "greenish" urine, a sharp "pull" in the shaft of his penis, and a pinching sensation in his pelvic area. ECF No. 1 at p. 4. He alleges that Ford refused to order an x-ray or MRI and merely ordered that a culture be conducted. Plaintiff asserts that a urine culture revealed a large amount of leukocytes. He complains that from that one test he was diagnosed with a urinary tract infection ("UTI") and given medication.

Plaintiff alleges that his vital signs were checked and he was given bacitration$^2$ or Motrin. He complained of blurred vision, slurred speech and loss of function and feeling in parts of his hands, legs and feet. Id. at p. 4. Plaintiff claims that these problems got worse over the course of the next two years, when he experienced bouts of pain, numbness, tingling progressing into "wrenching pain," paralysis of the thigh, and loss of feeling in both feet. He complains that throughout 2010 and 2011, Dr. Matera and other physicians denied his requests for "physical support" and medical assistance for a previous back and shoulder injury from 2008, symptoms in his rib and pelvic area, sinus pain and a severe nose bleed, a yellowish-"greenlike" fluid draining from

2

his leg and coming out of his mouth, swelling of his wrist, a high calorie diet, and blisters. ECF No. 1 at pp. 5-11). Plaintiff complains that instead of being properly assessed for his "serious medical conditions," he has been accused of having delusional behavior. He seeks declaratory and injunctive relief, along with compensatory and punitive damages, and prays a jury trial. Id. at pp. 16-17.

In his Supplemental Complaint, Plaintiff states that since his transfer to WCI he had received blood testing, knee and back braces, a cane and an appointment with a physical therapist ("PT") to address his many injuries and symptoms. ECF No. 4.

Defendants have filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment,[3] to which Plaintiff has filed an Opposition, and Defendants have filed a Reply.[4] ECF Nos. 14, 16, & 17. The matter is ready for consideration and may be determined without oral hearing. See Local Rule 105.6 (D. Md. 2011).[5]

## II. Standard of Review

Where a plaintiff proceeds without counsel, his filing is to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007).

Because matters outside the pleadings shall be considered, Defendants' Motion shall be treated as a motion for summary judgment. Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

---

[2] Plaintiff is undoubtedly referring to bacitracin, a topical antibiotic ointment.
[3] Plaintiff's Requests for the Entry of Default Judgment (ECF Nos. 11 & 12) shall be denied.

[4] Plaintiff has submitted a Motion for Leave to File an Amended Complaint, filed after his receipt of Defendants' dispositive motion. ECF No. 16.

[5] Plaintiff's interlocutory appeal was dismissed by the Fourth Circuit on January 25, 2013. ECF No. 22.

law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

The "party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to. . .the nonmovant, and draw all reasonable inferences in [his] favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644–45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986)).

In Anderson, 477 U.S. at 249, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." Id. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. See Celotex Corp., 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

III. Discussion

Denial of Medical Care

A. Facts

Defendants contend that Corizon, Inc. ("Corizon") may not be held liable under § 1983 based upon a respondeat superior theory. ECF No. 14. Defendants additionally note that Plaintiff is being treated for a host of psychotic symptoms and contend that his mental instability is the sole reason why this matter is pending before the Court. Id. They state that he has, at various times, offered "peculiar" symptoms of fluid coming from his brain, fluid bursting from his abdomen, urine sweating out of his pores, and his body turning into a woman's body. ECF No. 14 at Medical Exs. 16-19, 24, & 87. Defendants affirm that Plaintiff has received multiple x-rays and physical examinations both before and after the January 2010 assault. They state that his health is fine and that his complaints of pain and immobility were viewed as "disingenuous" in light of the objective findings of healthcare staff in regards to his physical movements. Id. at Medical Ex. 100. Defendants maintain that the records show that Plaintiff was afforded continuous care for his outlandish medical claims. Prior to the January 23, 2010 assault, he had complained of a shoulder injury and seizures, but musculoskeletal and physical examinations and x-rays of the shoulder and lumbar spine revealed nothing wrong with Plaintiff. ECF No. 14 at Medical Ex. 1. Further physical

5

exams were unremarkable. Id. at Medical Exs. 2-7. After the assault, Plaintiff was seen by medical staff and complained of greenish fluid emanating from his penis and a "pop" while urinating. Id. at Medical Exs. 8-10. UA dipstick test[6] was negative for any abnormalities of his urine. His penile shaft was normal and his bladder was normal. There is no record that Plaintiff's urine tested positive for leucocytes. Plaintiff was seen by Dr. Matera on May 6, 2010 for multiple complaints of pain which he alleged were related to an incident occurring in 2008. Further x-rays were ordered and there was no evidence of acute fracture, dislocation, or subluxations in Plaintiff's shoulder or spine. Laboratory studies were conducted to measure the fluid levels in Plaintiff's body. These tests showed no abnormalities. Id. at Medical Exs. 11-22.

Defendants affirm that from October 2010 to January 2011, Plaintiff continued to report "bizarre" symptoms to medical staff of leaking urine from his legs, mouth, and sinuses. In March 2011, Plaintiff complained of muscle spasms and an unsteady gait and had difficulty walking. Id. at Medical Exs. 35-40. Defendants state that once housed and observed in the infirmary, it was found that Plaintiff was able to ambulate. No abnormalities, tenderness, or deformity were noted. Id. Plaintiff was also treated on March 18, 2011 by Dr. Inzerillo, who examined his complaints of an unsteady gait. Inzerillo noted that Plaintiff had no problem ambulating in the infirmary ward. Further observations attested to the fact that Plaintiff could lean forward, carry books, stand up, sit down, and walk out of an office without difficulty. Id. at Medical Exs. 41-50. Another set of x-rays taken on April 1, 2011, for joint pain revealed no abnormalities. Id. at Medical Exs. 41-51. In April of 2011, Plaintiff was found to be participating in yard activities and asked to work in the kitchen, this despite claiming that he "falls all the time." ECF No. 14 at Medical Exs. 52 & 54. Plaintiff was seen by Drs. Quilo and Inzerillo for his complaints, with both physicians noting that there were no

---

[6] A Urine Dipstick test monitors color, appearance, specific gravity, PH, protein, glucose, occult blood, ketones, bilirubin, leukocyte esterase, nitrite, and urobilogen. See www.childrensdayton.org

objective findings of abnormalities. Plaintiff was referred to PT to diagnose his condition. PT was completed on February 14, 2012. Id. at Medical Exs. 63-75. Plaintiff was seen again by Dr. Quilo on February 13, 2012, and was denied a requested cane and knee brace. Id. at Medical Exs. 77-79. X-rays showed no damage to his knee or cervical spine. Plaintiff's thoracic spine x-ray showed evidence of mild to moderate scoliosis.[7] Id. at Medical Exs. 86 & 95.

Defendants allege that with negative objective findings and test results, Plaintiff was again referred to the psychiatric department for an evaluation. Medical staff ensured that the psychiatric medication (Wellbutrin), to which he had been prescribed, was still active. Despite his complaints of back pain and difficulty ambulating, no objective abnormalities could be noted visually or by diagnostic testing. He was able to walk into and out of the examination and ambulated without assistance.

In his Opposition, Plaintiff maintains that he was in fact assaulted on January 23, 2010 and claims Defendants acknowledge that no medical care was provided in response to that assault. ECF No. 16. He asserts that medical personnel logged in all of his complaints and yet his grievances mentioning the assault and asking for medical assistance went without response. He claims that x-rays taken of his skeletal system show he has mild scoliosis of the spine and he continues to complain of simple pain and muscle spasms of the back and legs, yet has received no treatment for the condition. Plaintiff takes issue with the failure to have his spine, bone and muscles checked. He infers that the scoliosis developed due to the lack of treatment on the day of the assault. Id.

---

[7] Scoliosis is a sideways curvature of the spine that occurs most often during the growth spurt just before puberty. Most cases of scoliosis are mild, but some children develop spine deformities that continue to get more severe as they grow. Severe scoliosis can be disabling. An especially severe spinal curve can reduce the amount of space within the chest, making it difficult for the lungs to function properly. Children who have mild scoliosis are monitored closely, usually with X-rays, to see if the curve is getting worse. In many cases, no treatment is necessary. See www.mayoclinic.com/health.

7

In their Reply, Defendants acknowledge the January 23, 2010 assault, but affirm that the records show that Plaintiff received a minor injury of a small puncture wound to his shoulder. ECF No. 17. As to his claims that he developed scoliosis from the lack of treatment, Defendants affirm that the objective findings do not support his claim and there is no showing, aside from Plaintiff's own commentary, that his requests for consultations with specialists and an MRI would have made a difference in his condition or ensured that he would not have developed mild scoliosis. Id.

B. Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." De'Lonta v. Angelone, 330 F.3d 630, 633 (4th Cir. 2003) (citing Wilson v. Seiter, 501 U.S. 294, 297 (1991)). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need.[8] See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition.

---

[8] The medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. See Foelker v. Outagamie County, 394 F.3d 510, 512-13 (7th Cir. 2005).

Farmer, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Va. Beach Correctional Ctr., 58 F.3d 101, 105 (4th Cir. 1995), quoting Farmer, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. Brown v. Harris, 240 F.3d 383, 390 (4th Cir. 2001) (citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

Inmates do not have a constitutional right to the treatment of their choice, Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986), and disagreements between medical staff and an inmate over the necessity for or extent of medical treatment do not rise to a constitutional injury. See Estelle, 429 U.S. at 105-06; Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); see also Fleming v. LeFevere, 423 F. Supp. 2d 1064, 1070-71 (C.D. Cal. 2006).

Plaintiff has been asked to rebut Defendants' medical exhibits with his own verified documents to establish a genuine dispute of material fact. In this, he has failed to do so.[9] The

---

[9] Defendant Corizon would also be entitled to judgment. To the extent the Complaint names Corizon for the alleged denial of medical care solely upon vicarious liability, the law in this Circuit is clear. The doctrine of

9

record shows that ECI medical personnel were attentive to Plaintiff's medical needs. He was repeatedly seen by nurses, PAs and doctors for his multiple complaints, some of which, even when affording Plaintiff's claims a generous construction, appear incredible. Further, he received multiple urine, blood, and x-ray tests, all of which were within normal range, and was prescribed medications for his claims of pain and infection. At best, Plaintiff's Complaint alleges that he is not satisfied with the medical care that has been provided to him. Plaintiff does not and cannot allege that Defendants had a culpable state of mind and failed to provide him with treatment for his complaints. The actions of medical staff are hardly consistent with someone who is deliberately indifferent to or recklessly disregarding a serious medical condition. As already indicated, the fact that he did not receive the tests and consults of his own choosing, does not set out an Eighth Amendment claim.[10]

## IV. Conclusion

For the aforementioned reasons, Defendants' Motion for Summary Judgment shall be granted. Judgment will be granted in favor of Defendants and against Plaintiff. A separate Order follows.

May 13, 2013                    _____/s/_____
                                George L. Russell, III
                                United States District Judge

---

respondeat superior does not apply to 42 U.S.C. § 1983 claims. See West v. Atkins, 487 U.S. 42, 54–58 (1988); Rodriguez v. Smithfield Packing Co., 338 F.3d 348, 355 (4th Cir. 2003); Austin v. Paramount Parks, Inc., 195 F.3d 715, 727-28 (4th Cir. 1999); Powell v. Shopco Laurel Co., 678 F.2d 504, 506 (4th Cir. 1982).

[10] For these reasons Plaintiff's Motion for Leave to File an Amended Complaint (ECF No. 16) is denied as moot.